IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-HC-2132-FL

| | | |
|---|---|---|
| CHAD HOUSTON MONEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WARDEN M.L. KING, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on respondent's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 10). Petitioner responded in opposition, and in this posture, the issues raised are ripe for ruling. Also before the court is petitioner's motion to preserve evidence (DE 17).

### STATEMENT OF THE CASE

Petitioner, a federal inmate proceeding pro se, commenced this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on July 27, 2022. Petitioner challenges his disciplinary conviction for prohibited use of drugs on the basis he was falsely accused. Petitioner seeks expungement of the infraction from his record and return of 41 days of good time credit.

Respondent moves for summary judgment, arguing the disciplinary proceedings complied with petitioner's due process rights, the weight of the evidence supported a finding that petitioner committed the prohibited act, and the sanctions imposed were appropriate and consistent with federal regulations. In support, respondent relies on a memorandum of law, statement of material facts, and appendix comprising the following: 1) declaration of Kelly Forbes, a paralegal specialist

employed by the Federal Bureau of Prisons ("FBOP"); 2) petitioner's SENTRY public information and disciplinary data; and 3) disciplinary hearing officer's ("DHO") amended report signed March 2, 2022.

Petitioner responded in opposition, supported by a memorandum of law, statement of material facts, and an appendix comprising the following: 1) DHO's report signed January 24, 2022; 2) written statement by prison counselor D. Kornegay ("Counselor Kornegay"), dated March 7, 2022; 3) emergency memo to investigator Lieutenant Andrews dated December 22, 2021; 4) memo to DHO regarding notification of staff and verification of camera dated January 13, 2022; 5) Lieutenant Andrews's investigation memo dated November 16, 2021; 6) lab report dated September 7, 2021; 7) Kenneth Devore's initial statement dated September 13, 2021; 8) memo of extension dated November 23, 2021; 9) petitioner's sentence monitoring computation data dated September 29, 2021; 10) sworn statement of inmate Shea Byrd; 11) program statement; 12) standard procedures for collecting urine surveillance samples; and 13) inmate discipline process.

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to petitioner.[1] Petitioner, a federal inmate, was housed at the Federal Correctional Institution in Butner, North Carolina at the time he was convicted of the disciplinary offense at issue in this

---

[1] Petitioner submitted a verified petition in this matter. **Error! Main Document Only.**Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding verified complaints based on personal knowledge are competent summary judgment evidence).

2

action. (Pet. (DE 1) at 1; see also Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2; Forbes Decl. (DE 13-1) ¶ 6).[2,3]

On August 6, 2021, petitioner, along with five other inmates, were selected for a drug screening. (Pet. (DE 1) at 4; Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 4; Forbes Decl. (DE 13-1) ¶ 10; Resp. Ex. 4, Chain of Custody Form (DE 13-5) at 17). On September 8, 2021, petitioner was charged with prohibited use of drugs, specifically methamphetamine and amphetamine. (Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2, 4; Forbes Decl. (DE 13-1) ¶¶ 10–11). The DHO hearing record provides the following account regarding the proceedings:

> Initially the DHO hearing was conducted on September 28, 2023, at 8:15am. [Petitioner] denied the charge, claiming proper procedure was not followed. After further review[,] the DHO determined further investigation was needed and elected to send the report back to "pending investigation" status. The DHO attempted to conduct the rehearing on December 21, 2021, at 8:50am. At the beginning of this hearing[,] [petitioner] requested video be reviewed. The DHO elected to postpone the hearing so video could be review[ed]. Later that day, C. Slaydon, SIS Tech, advised there are not cameras in that area. [Petitioner] was advised. The DHO hearing then proceeded on December 28, 2021. The DHO first ensured the inmate had received a copy of the incident report, understood his rights, and was not requesting the assistance of a staff representative. [Petitioner] did wish to call a witness, had documentary evidence to present, and did request video evidence be reviewed. It was noted the hearing was delayed due to further investigation. Authorization was received from the Warden to continue. The DHO then read aloud Section 11 of the incident report and asked [petitioner] if it was true. [Petitioner] then stated, "I deny the charge. Procedure was not followed. I am not guilty. He had me sign documents before I peed. I was following his orders. There is a camera. Staff is lying about there not being a camera." [Petitioner] also provided a written statement.

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[3] Petitioner submitted a DHO hearing report dated January 24, 2022. (Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2–5). Respondent submitted an amended DHO hearing report dated March 2, 2022. (Resp't Ex. 4, Am. DHO Hr'g (DE 13-5) at 1–4). Both DHO hearing reports appear to be identical except the amended DHO hearing report is slightly more legible. Thus, the court only cites the January 24, 2022, DHO hearing report submitted by petitioner.

(Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2–3).

Due to COVID-19 restrictions, petitioner's witness, a fellow inmate, was not allowed to appear at the hearing but provided the following written statement:

> This statement is in support of [petitioner's] claim of improper handling if urinalysis samples. I was tested at the same time. I personally observed the chain of custody violated during urine testing of [petitioner] and others. As a former military SACO officer assistant, I have been trained on proper procedure. Urine samples must be properly labeled and must be handled and kept in plain unobstructed view of the individual providing the sample. This is to guarantee there is no contamination of the sample and to be certain the samples are not substituted. When the chain of custody is broken, the sample must be thrown out. A tainted sample should not be relied upon and should not be used as evidence. This statement provides my first-hand account of improper handling of urinalysis samples.

(Id. at 3).

After the hearing, the DHO found petitioner had committed the act charged and stated the following in support of his finding:

> I find [petitioner] committed the prohibited act of Use of Drugs, Code 112, while housed at the Federal Correctional Institution I, Butner, North Carolina, on August 06, 2021. The specific evidence relied upon to support this finding was the statement of D. Douglas, SIS Technician, provided in the form of a written report (incident report) stating the following:
>
> On September 08, 2021, written documentation was received from Pharmtech Laboratories reflecting that urine specimen bar code #BOP0005352374, tested positive for the use of Methamphetamine and Amphetamine. A review of the FCI I Butner Urine Log folder reflected that the urine specimen bar code #BOP0005352374, is assigned to [petitioner]. [Petitioner] provided a urine sample on August 06, 2021, at 20:00.
>
> On September 08, 2021, at 10:30, written documentation was received from FCI I Butner Medical Department reflecting that [petitioner] was not prescribed any medication which would test positive for Methamphetamine and Amphetamine, or anything that would give a false positive for Methamphetamine and Amphetamine.
>
> [Petitioner was] made aware of the supporting medical memorandum, Chain of Custody, and laboratory report.

A memo dated November 16, 2021, from E. Andrews, Lieutenant, ["Lt. Andrews"] investigating the improper procedural claim was provided. It reads,

On [November 16, 2021,] at approximately 3:35pm, I Lt. Andrews investigated allegations that [petitioner] stated, that the Officer M. Mergenger had him sign the UA Document before he provided urine sample. I asked Officer M. Mergenger to give me the proper procedure on how he conducted Urinalysis test on [petitioner]. Officer M. Mergenger stated, he called him to the officer's station and identified [petitioner]. I keep direct supervision on [petitioner] to conduct a search. I had [petitioner] wash and dry his hand [before] I observed [him] peeing in the UA cup. [Petitioner] gave me the UA cup and I place the lid on the UA cup in front of him. Then let [petitioner] was and dry his hand again. Next, I signed UA form and then [petitioner] signed the UA form. I sealed the UA cup in front of [petitioner]. The Sample was placed in a secured storage area in the lieutenant's office for SIS.

The investigator concludes that [petitioner's] allegation that Officer M. Mergenger had him sign the UA document before he provided urine sample, have no merit.

During the DHO hearing, [petitioner] denied the charge, using as [his] defense, procedure was not followed, he (Officer Douglas) had [him] sign documents before you provided [his] urine sample. [Petitioner] also stated, [he was] following his orders, and [petitioner] did not have any drugs. [Petitioner] also provided a written statement which detailed [his] version of the incident. In deciding the issue, I considered [petitioner's] denial and defense, but was not swayed or convinced of [petitioner's] innocence. [Petitioner's] requested witness statement was also considered, but did not provide any factual evidence regarding [his] specific urinalysis test. [Petitioner's] witness statement regarding his previous occupation and knowledge of their specific procedure regarding urinalysis does not provide any evidence or facts regarding the reported incident. [Petitioner's] written and verbal statement, procedure was not followed, Officer Douglas had [him] sign documents before [he] provided [his] urine sample, does not excuse the fact [his] sample, BOP0005352374, tested positive for Methamphetamine and Amphetamine.[4]

Medical staff verified [petitioner is] not prescribed any medication which would test positive for Methamphetamine and Amphetamine, or provide a false positive. I have no reason to doubt Lieutenant Andrews'[s] investigation into [petitioner's] claim or Mr. Douglas'[s] account of the incident. However, [petitioner has] an obvious motive to be dishonest in [his] denial and defense, in an attempt to not be held accountable for [his] prohibited behavior.

---

[4] Although the DHO noted Officer Douglas as the staff member that collected the urine sample, the parties agree Officer M. Mergenger was in fact the officer who collected petitioner's urine sample on August 6, 2021. (See Pet. (DE 1) at 5; Resp. Ex. 4, Chain of Custody Form (DE 13-5) at 17).

> I based my decision on the greater weight of the reporting staff member's statement, you provided a urine sample, BOP0005352374, which tested positive for Methamphetamine and Amphetamine, along with supporting evidence from Pharmtech Laboratories and FCI I Butner Medical staff.
>
> Accordingly, based on the greater weight of the evidence presented, I find you committed the prohibited act of Use of Drugs, Code 112, of the inmate discipline policy.

(Id. at 4–5; see also Pet'r Ex. D, Lt. Andrews Memo (DE 15-1) at 10; Pet'r Ex. E, Lab Results (DE 15-1) at 11; Resp. Ex. 4, Chain of Custody Form (DE 13-5) at 17)). Petitioner was sanctioned with loss of 41 days good time credit, six months loss of phone privileges, and 25 days of disciplinary segregation. (Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 5; Forbes Decl. (DE 13-1) ¶ 14).

Prior to the final hearing, on December 22, 2021, petitioner submitted a statement to Lt. Andrews indicating Officer M. Mergenger was lying regarding the urinalysis procedure followed and provided petitioner's own account. (Pet'r Ex. B, Pet'r Memo (DE 15-1) at 7–8). Although the DHO investigation determined there was no camera in the area where the drug screening was performed, there is an observable stationary camera outside the Butner Camp Administrative Building facing the front door and office area. (Pet. (DE 1) at 5; Pet'r Ex. A, Counselor Kornegay Stmt. (DE 15-1) at 6).

### COURT'S DISCUSSION

A.  Motion for Summary Judgment

　　1.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing

6

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[5]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law

---

[5]  Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

7

is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture."  Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.  Id. at 489–90.

    2.    Analysis

Petitioner challenges the disciplinary proceedings in this case, especially the loss of his good time credit.  Specifically, petitioner claims his urinalysis sample was mishandled leading to the false positive determination that petitioner was taking methamphetamines and amphetamines. (Pet'r Mem. (DE 15) at 7).  The Supreme Court has mandated certain procedural safeguards when loss of statutory good-time credit is at issue.  See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Under the Wolff standard, an inmate is entitled to the following: 1) written notice of the charges at least twenty-four hours in advance of the hearing; 2) a written statement by the factfinders as to the evidence relied on and reasons for disciplinary action; and 3) to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.  Id. at 564–566; see also Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019).  Additionally, the findings of a prison disciplinary board must be supported by some evidence in the record, Walpole v. Hill, 472 U.S. 445, 454–55 (1985), and be made by an impartial adjudicator.  Wolff, 418 U.S. at 570–71.

Federal courts will not review the accuracy of the disciplinary hearing officer's fact finding de novo or for clear error.  See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990).  Rather "the

relevant question is whether there is any evidence in the record that could support the conclusion reached" by the disciplinary hearing officer. Id. (quotation omitted).

The gravamen of petitioner's petition is that he was denied his procedural due process rights when he was denied the right to call witnesses and present documentary evidence at the hearing, as well as the right to an impartial fact finder. (Pet'r Mem. (DE 15) 2–7). To the extent petitioner argues he was not allowed to have his witness present during the hearing, petitioner nevertheless was permitted to present a written statement from his chosen witness. (See Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 3). Moreover, the undisputed evidence shows that the witness was not permitted to appear at the hearing in person because of movement restrictions instituted due to the COVID-19 pandemic. (Id.). As such, petitioner's procedural due process rights were not violated where the witness appearing in person would have been hazardous to institutional safety. See Wolff, 418 U.S. at 564.

The court next addresses petitioner's argument that his right to an impartial fact finder was violated. (Pet'r Mem. (DE 15) 4–6). To the extent petitioner claims the DHO was biased, no evidence has been submitted that this is the case. In fact, the DHO permitted multiple extensions in the disciplinary proceedings to allow for further investigations into whether proper procedures were followed for the urinalysis and whether video evidence existed. (Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2–3). Regarding the investigating officer Lt. Andrews, petitioner claims he failed to interview petitioner or ask petitioner whether any witnesses should be interviewed. (Pet'r Mem. (DE 15) 2–6). However, Lt. Andrews's investigation was limited to petitioner's statements that proper procedures had not been followed in processing petitioner's urine sample. (See Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2, 4). Petitioner had already provided the DHO with his own statement

9

as well as a witness' statement that proper procedures had not been followed. (Id. 2–3; Pet'r Ex. F, Witness Stmt. (DE 15-1) at 12). Petitioner argues that Lt. Andrews's framing of the question to Officer M. Mergenger to give him "give him the proper procedure on how he conducted" petitioner's urinalysis demonstrates bias. (Pet'r Mem. (DE 15) 5). Petitioner contends Lt. Andrews's phrasing requested the general proper procedure to be followed and not the procedure that was actually followed on August 6, 2021. (Id.). Such a phrase from the DHO report standing alone is insufficient to demonstrate bias in the investigative process. See Withrow v. Larkin, 421 U.S. 35, 47 (1975) (providing examples of bias in administrative processes).

Next, the court considers petitioner's contention that he was denied his right to present documentary evidence. (Pet'r Mem. (DE 15) 2–4). Petitioner specifically argues that, although a prison staff member informed the DHO that no cameras were in the area where the urinalysis took place, there is in fact a stationary camera present where at least part of the events may have been captured. (Id.). "[I]nmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and compel consideration of video surveillance evidence." Lennear, 937 F.3d at 273–74. This is particularly the case where there is evidence that is "exculpatory or otherwise likely to assist an inmate in mounting a defense," id. at 270, and the provision of such evidence would not be "unduly hazardous to institutional safety or correctional goals," id. at 273. Upon an inmate's request for video footage,

> (1) the government bears the burden of establishing a legitimate penological justification for refusing to consider such evidence; (2) whether an asserted penological justification warrants denying consideration of such evidence must be assessed on a case-by-case basis; (3) to the extent consideration of such evidence is denied on grounds that the evidence is not pertinent, that determination must be made by the hearing officer, not prison officials involved in lodging the charge; and (4) before categorically refusing to consider such evidence, the government should assess whether any alternative avenues exist for permitting consideration of the

10

evidence, in some form, that protect the asserted legitimate penological consideration for restricting consideration of such evidence.

Id.

Respondent argues that the evidence demonstrates that the investigation of the underlying disciplinary action determined there were no cameras in the area relevant to the instant action. (Resp. Mem. (DE 11) at 9). Respondent further notes that, while the investigation revealed "there [were] not cameras in that area," petitioner notes a camera exists but provides no proof about the viewing area of the camera or the specifics of the camera's capabilities. (Id. at 9 n.5).

As noted above, petitioner requested that video evidence be reviewed. (Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2). The DHO postponed the hearing to allow for the investigation into video evidence of the August 6, 2021, urinalysis. (Id.). It was determined "there are not cameras in that area." (Id.). However, in his verified petition, petitioner provides he has personal knowledge of a camera from the Butner Camp Administrative Building that may show he was not permitted to verify his urinalysis was properly sealed. (Pet. (DE 1) at 5, 8). Petitioner states, "I was well aware that this camera existed because I walked out the front door of camp everyday to go to work at the Unicor Warehouse." (Id. at 8). Petitioner's verified statements are further bolstered by Counselor Kornegay's following statement in prison records: "Per our conversation on [February 7, 2022,] it was determined that there is a stationary camera located in the admin building at the camp. The camera does not move[.] [T]herefore, it is not certain there is video evidence from the night of [August 6, 2021.]" (Pet'r Ex. A, Counselor Kornegay Stmt. (DE 15-1) at 6).

Because the disciplinary investigation determined no cameras were in the area when the urinalysis was performed, the DHO did not review any video evidence during the disciplinary

11

hearing. (See (Pet'r Ex. 1, DHO Hr'g (DE 15-1) at 2–5). A genuine of material fact exists where the DHO hearing record indicates no cameras existed in the area of the urinalysis, but petitioner's verified statements demonstrate personal knowledge of a camera in the relevant area. Furthermore, the existence of relevant video evidence regarding improper handling of the August 6, 2021, urine samples would directly address the sufficiency of the evidence in the underlying disciplinary proceeding. Accordingly, the motion for summary judgment is denied on this basis, and the matter is referred to the magistrate judge for further factfinding.

B.     Motion to Preserve Evidence

Next, the court addresses petitioner's motion to preserve relevant video evidence of the night of August 6, 2021. (Pet'r Mot. Preserve (DE 17)). Petitioner notes that FBOP only stores documentary evidence for two years. (Id. at 1). Therefore, the motion is granted, and respondent is respondent is directed to preserve all relevant video evidence in this matter.

## CONCLUSION

Based on the foregoing, the court GRANTS petitioner's motion to preserve video evidence (DE 17). The court GRANTS IN PART and DENIES IN PART respondent's motion to dismiss (DE 10). Respondent's motion is denied as to petitioner's claims regarding video evidence and sufficiency of the evidence for the underlying disciplinary proceeding. The court grants respondent's motion as to the remaining due process claims.

Where the court denies in part the instant motion for summary judgment, the pending § 2241 habeas action is REFERRED to United States Magistrate Judge Robert B. Jones, Jr., for evidentiary hearing and entry of memorandum and recommendation proposing resolution of the claims. Pursuant to 18 U.S.C. § 3006A(a)(2)(B), the Federal Public Defender is APPOINTED to

represent petitioner at the evidentiary hearing and for any further proceedings on the instant petition. The magistrate judge will notify the parties how he wishes to proceed.

SO ORDERED, this the 27th day of March, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge